IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KENNETH A. DUNN

        Petitioner,

vs.                                        CIV 18-0289 MIS/KBM

KEN SMITH, Warden, and
HECTOR H. BALDERAS, Attorney General
for the State of New Mexico,

        Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      THIS MATTER is before the Court on Kenneth A. Dunn's Petition Under 28

U.S.C. § 2254 for a Writ of Habeas Corpus, filed on March 27, 2018 ("Petition")

*(Doc. 1)*. The Honorable Kenneth J. Gonzales[1] referred this case to me to conduct

hearings, if warranted, and to perform any legal analysis to recommend an ultimate

disposition of this case. *Doc. 5*. Because Dunn[2] filed after the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply.

*See e.g., Abdul-Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,*

531 F.3d 1306, 1319 (10th Cir. 2008), *cert. denied,* 556 U.S. 1211 (2009).

---

[1] On October 28, 2021, this case was transferred to the Honorable Margaret I. Strickland.

[2] Because Petitioner has represented himself at times during court proceedings both in state court and in this federal habeas action, I will occasionally refer to Petitioner as "Dunn" when such reference clarifies actions taken by him individually rather than by his counsel.

In his Order appointing counsel for Petitioner, Judge Gonzales ordered briefing of issues he identified therein. Assistant Federal Public Defender Aric Elsenheimer filed his Brief on behalf of Petitioner *(Doc. 28)*, which was subsequently amended on January 27, 2021 *(Doc. 31)*.[3] The Response of the New Mexico Attorney General followed on April 5, 2021 *(Doc. 34)*, and Petitioner filed his Reply on May 10, 2021 *(Doc. 40)*. In addition to reviewing those briefs and the state court record ("*Record*" at *Docs. 35-1, 37-1*), I have listened to all of the jury trial recordings lodged with the Court *(Doc. 36)*.[4]

Because all issues can be resolved on the record before me, an evidentiary hearing is unnecessary. *See, e.g., Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Hooks v. Workman,* 606 F.3d 715, 730-31 (10th Cir. 2010); *Alverson v. Workman,* 595 F.3d 1142, 1164 (10th Cir. 2010), *cert. denied,* 562 U.S. 1008 (2010); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. After due consideration of the briefing, the record, and the applicable law, the Court recommends that habeas relief be denied.

## I.    Background

Under the AEDPA, a federal court must presume that a state court's factual findings are correct unless clear and convincing evidence indicates otherwise. *See* § 2254(e)(1); *Schriro*, 550 U.S. at 473-74. State District Judge Louis P. McDonald

---

[3] All references to the federal habeas petition will be to the final amended brief filed by Petitioner's counsel *(Doc. 31)*.

[4] Although there was a written transcript *(Doc. 37-1)* of the evidentiary hearing held June 17, 2014, only digital recordings were currently available for the trial proceedings of May 2 and 3, 2006. Hopefully in the last 15 years, the state court's recording system has evolved to eliminate the distracting clacking of the bailiff's keyboard.

presided over all state district court proceedings in this matter. In his February 5, 2016

state court order ("SCO")[5] on Dunn's state habeas petition, Judge McDonald

summarized the trial evidence:

> On July 21, 2003, the victim, then 16, awoke to a knock on her door. She looked out her bedroom window and saw her friend's family car. Assuming it was her friend, she went to the door. When she opened the door, she found her friend's father, Petitioner. The victim immediately tried to close the door, but Petitioner placed his foot in the door and pushed his way into her home.
>
> The victim ran for the garage and Petitioner ran after her. When the victim attempted to escape under the then opening garage door, Petitioner immediately pushed the garage door button and the door began to close. Petitioner tried to pull the victim back into the house. The victim screamed for help. When Petitioner was able to get the victim back into the house, they sat in the laundry room and the victim attempted to calm Petitioner and reason with him.
>
> Eventually, Petitioner walked into the living room and the victim again tried to escape. Petitioner restrained the victim in the living room and pulled her to the floor. Petitioner handcuffed the victim's right hand. Petitioner then hit the victim. The victim continued to try to get away from Petitioner, but he pinned the victim to the floor. At that point, Petitioner digitally penetrated the victim.

*Doc. 35-1 ("Record")* at 304 (internal citations to the record omitted).[6] Later in the SCO,

Judge McDonald also expressly found that "witness testimony made clear that the victim

was not voluntarily freed . . . ." *Record* at 310.

On July 21, 2003, Dunn was arrested. Ten days later, a state grand jury indicted

Dunn on three counts: Count I, Criminal Sexual Penetration (Personal Injury) ("CSP II");

Count II, Aggravated Burglary (Commits Battery); and Count III, Kidnapping (Great

---

[5] That Order can be found at pages 303-312 at *Doc. 35-1 ("Record"),* and I will often refer to it as the "SCO" throughout these proposed findings and recommendation.

[6] The *Record* has been numbered in several different ways. For clarity, the Court will cite to the docketed CM/ECF page numbers stamped in blue at the top of each page.

Bodily Harm). *Record* at 1-2. He was arraigned in New Mexico's Thirteenth Judicial District Court in Sandoval County on August 14, 2003.

On October 21st, just three months after his arrest, Dunn sent correspondence to the state court indicating his belief that he was a Sovereign Citizen[7] not subject to the laws of New Mexico. *Record* at 6-10. At a status conference two weeks later on November 3, 2003, Dunn's appointed counsel orally moved for a competency evaluation, which the state court granted that same day. *See Record* at 11. The record does not indicate whether the evaluation actually occurred.

Seven weeks later, on December 23, 2003, Dunn's defense counsel withdrew, and Attorney Leonard Foster ("Foster") was appointed to represent Dunn. *Record* at 545. On January 23, 2004, Foster also filed a written motion for a hearing to determine competency, and that same day, the state court once again ordered a competency evaluation. *Record* at 13-14.

On February 11, 2004, Dunn sent even more correspondence to the Court setting forth his Sovereign Citizen views. *Record* at 15-36. On February 20, 2004, following a motion by Dunn's counsel, the state court entered yet another order to transport Dunn to the office of Dr. Lori Martinez for her to perform a competency evaluation on February 25, 2004. *Record* at 37, 38.

---

[7] Petitioner's counsel provides some insights into the "Sovereign Citizen" movement. "Odd capitalization, use of red-ink, unique use of parenthesis and brackets, (mis)reliance on the Uniform Commercial Code, admiralty law and administrative law are all hallmarks of an adherent to sovereign citizen beliefs." *See Doc. 40* at 2-4 (citing Michael Crowell, *A quick guide to sovereign citizens,* Administration of Justice Bulletin, University of North Carolina, School of Government (2015); J. M. Berger, *Without prejudice: What sovereign citizens believe.* Washington, DC: Program on Extremism at George Washington University (2016)).

On July 26, 2004, the state court held a competency hearing. *Record* at 305. According to the Clerk's Receipt, the two-and-a-half-minute hearing evidently convinced Judge McDonald that a further competency evaluation should be performed at the Las Vegas Medical Center ("LVMC").[8] *Record* at 40. Indeed, Dunn confirms that Judge McDonald ordered him to "be taken to Los [sic] Vegas for psychological testing" at the July 26th hearing. *Record* at 41-42 (Dunn's "Truth Affidavit").[9] It was not until August 30, 2004, however, that a "Presentment Hearing" was held for an evaluation at LVMC. *Record* at 305. "No order was entered regarding this hearing." *Id.*

On December 9, 2004, Assistant District Attorney Joseph Arite submitted a request for status conference, which was held January 10, 2005. *Record* at 51. At that time, Dunn's competency was again raised. *Record* at 52. As a result, the Court entered an order committing Dunn to LVMC for treatment to attain competency to stand trial. *Record* at 53-55. In the February 17, 2005 order, Judge McDonald explicitly found that Dunn "(1) is accused of a felony; (2) is presently not competent to proceed in the criminal case and; (3) [ ] is dangerous, as defined in NMSA 1978 31-9-1.2(C)." *Record* at 53.

On May 18, 2005, Dunn filed a pro se motion to dismiss the indictment alleging violations of his federal and constitutional speedy trial rights. *Record* at 56. Noting that

---

[8] Petitioner refers to what was formerly known as the Department of Health of the State of New Mexico Las Vegas Medical Center/Forensic Division. Although it is now known as the New Mexico Behavioral Health Institute, for consistency with the record, the Court will refer to it as LVMC.

[9] Dunn's "Truth Affidavit" is dated August 24, 2004, was notarized September 3, 2004, bears a September 14, 2004 Sandoval County date stamp, and was filed in state district court on October 6, 2004. *Record* at 41-43. In this document, Dunn alleged that the July 26th hearing violated his First, Fifth and Sixth Amendment rights. *Record* at 42.

he had been detained almost 22 months at the Sandoval County Detention Center ("SCDC") awaiting trial, Dunn maintained that none of the delay should be attributed to him. Insofar as the delay was premised on evaluating his competency to stand trial, Dunn contended that neither of his appointed attorneys had demonstrated "good cause" to question his competency. *Record* at 58-59.

On July 14, 2005, the state court held a hearing "where it was acknowledged by all counsel and the Court that getting a competency evaluation was taking too long, and that it would be best to send [Dunn] to LVMC."[10] *Record* at 305. Because a bed would become available at LVMC on August 18, 2005, Judge McDonald entered an order for Dunn to be transported to LVMC on that date. *Record* at 66-67, 305*; see also Record* at 80 (Dunn acknowledging, "As of August 18, 2005, Movant has been detained . . . at the Las Vegas Medical Center."). At the July 14, 2005 hearing, the parties and the state court also agreed that "once the question of competency was raised, all proceedings were stayed, in accordance with NMSA 1978, Section 31-9-1; and therefore, the Motion to Dismiss that was ripe could not be addressed." *Record* at 305.[11]

On March 28, 2006, Judge McDonald found Dunn competent to stand trial and scheduled a jury trial starting May 2, 2006, approximately 36 days after Petitioner was found competent to proceed. *Record* at 97, 547. On April 28, 2006, Foster filed a motion to continue on the basis that he needed more time to investigate the impact of Dunn's

---

[10] In summarizing the findings at this hearing, the state court did not reference the earlier order entered on February 17, 2005, ordering Dunn's commitment.

[11] In this October 19, 2005 amended pro se motion to dismiss, Dunn asserted violations of his "Rights to a Speedy and Public Trial, Due Process, and Effective Assistance of Counsel" as well as his right to self-representation. Record at 69-70.

mental health on his ability to form specific intent at the time of the incident underlying the criminal charges. *Record* at 109-12. Evidently, the motion to continue was denied as the trial commenced May 2, 2006, as scheduled. At the conclusion of trial on May 3, 2006, the jury found Dunn guilty on all counts.

On August 16, 2006, Judge McDonald sentenced Dunn to nine years of incarceration on Count 1, nine years on Count II, and eighteen years on Count III with all sentences to be served consecutively. *Record* at 124-25. Dunn's trial counsel, Mr. Foster, did not file a notice of appeal or a waiver of appeal on behalf of Petitioner.

### A.  State Post-Conviction Proceedings

Almost four years after his conviction, on March 8, 2010, Dunn filed a pro se habeas petition in state court, *Kenneth A. Dunn v. Timothy Hatch, Warden. Record* at 128. Again, Dunn claimed that as a "sovereign citizen," neither the laws of New Mexico nor of the United States applied to him, and he set forth in detail why he believes that he "is not a United States (Fourteenth 14th Amendment) citizen or Federal citizen, or State citizen." *Record* at 158-86.

To the extent that any laws were deemed applicable, Dunn alleged violation of several constitutional rights including, among others, his right to a speedy trial, effective assistance of counsel, and due process. *Record* at 128. In this state habeas petition, Dunn also acknowledged that he told Judge McDonald he had refused to take a competency examination, but he argued that this "refusal" should not be interpreted as a failure to cooperate for the psychological evaluation. Instead, he maintained that he simply exercised his constitutional right to remain silent. *Record* at 134.On February 22, 2011, Judge McDonald entered a preliminary order on Dunn's petition. *Record* at 212-

14. He found that Dunn was not entitled to relief on most of his claims and so summarily dismissed all but three: "(a) Speedy trial, (b) Ineffective assistance of counsel, (c) Double jeopardy." *Record* at 213. Judge McDonald therefore authorized appointment of counsel to represent Dunn in an evidentiary hearing on his state petition. *Id.* In an April 25, 2011 letter to Judge McDonald, however, the Public Defender alerted the court that Dunn had declined counsel and that it did "not intend to file an entry in th[e] case." *Record* at 219 (letter filed February 6, 2012).

Dunn, indeed, wanted to represent himself on the state petition, and he filed a formal withdrawal of his right to counsel on June 9, 2011. *Record* at 215. In that filing, Dunn stated:

> Petitioner will be as clear as he can be. Petitioner does not want counsel to be provided and will not accept the same. Petitioner would appreciate it if the court would get off its judicial gluteus maximus and make a decision in his Habeas.

*Id*. Judge McDonald then ordered the State to prepare a response to the surviving issues in the habeas petition. *Record* at 218. The State filed its brief in opposition to the state habeas petition on April 2, 2012. *Record* at 221-29.

The evidentiary hearing on the state habeas petition commenced on April 21, 2014, but it was continued when Dunn raised two new issues at the hearing: improper jury instructions and the trial court's alleged failure to consider mitigating circumstances in sentencing. *Record* at 303. Judge McDonald granted Dunn leave to file supplemental briefing on the two new issues which he did on May 8, 2014. *Record* at 230-38. The State filed its reply brief on May 23, 2014. *Record* at 239-44.

The evidentiary hearing then recommenced on June 17, 2014. *Doc. 37-1* (Transcript of Hearing). Thereafter, on February 5, 2016, Judge McDonald entered the SCO denying relief on all grounds except one ineffective assistance of counsel claim. *See Record* at 303. Without discussing 15 of the 16 ineffective assistance of counsel claims, Judge McDonald found merit only in Dunn's argument that he received ineffective assistance because his attorney failed to file a notice of appeal. *Record* at 312. Thus, the state district court gave Dunn "thirty days from the date of the filing of this Order to file a notice of appeal with the Court of Appeals." *Id*.

Unfortunately, Judge McDonald failed to issue an order appointing the appellate division of the public defender to represent Dunn on his appeal as required by NMRA Rule 12-203, and Dunn did not file a pro se notice of appeal with the state Court of Appeals. Instead, Dunn filed a pro se writ of certiorari with the New Mexico Supreme Court ("NMSC") on March 14, 2016, 38 days after entry of the SCO. *Record* at 314. More than a year later on April 10, 2017, the NMSC summarily denied certiorari. *Record* at 466.

### B. Federal Habeas Proceeding in District Court

Dunn filed the instant federal pro se petition pursuant to § 2254 on March 27, 2018 *(Doc. 1).* The Court entered an order to show cause why the petition should not be dismissed as time-barred under 28 U.S.C § 2244(d)(1)(B) *(Doc. 8)*. Dunn responded, arguing that the limitations period was tolled because of an unconstitutional state impediment that prevented a timely filing *(Doc. 10)*. Judge Gonzales rejected Dunn's arguments in a November 22, 2019 Memorandum Opinion and Order *(Doc. 11)* and

dismissed the petition as time-barred *(Doc. 12)*. On December 9, 2019, Dunn filed a notice of appeal/request for certificate of appealability with the Tenth Circuit Court of Appeals *(Doc. 14)*.

### C. Tenth Circuit Appeal

On May 21, 2020, the Tenth Circuit granted a certificate of appealability and ordered the State of New Mexico to respond. *See Record* at 492. After receiving additional briefing, the Tenth Circuit vacated Judge Gonzales' order, finding error in the analysis of the timeliness of Dunn's § 2254 petition *(Doc. 20)*. The Tenth Circuit's September 30, 2020 Order and Judgment further remanded the case directing that

> [i]f Respondent continues to press the procedural ground for dismissal, at least two issues will need to be resolved: "(1) Did the New Mexico Supreme Court reject [Dunn's] petition for a writ of habeas corpus on the ground that it was untimely, or did it decide to resolve the petition on the merits? and (2) Was [Dunn] improperly denied the assistance of appointed counsel when he was granted the right to file an out-of-time appeal from his conviction? *Of course, the procedural issue can be bypassed if the district court determines that the [§ 2254 petition] fails on the merits.*

*Id*. at 2-3 (emphasis added).

### D. Proceedings on Remand to the District Court

On remand, Judge Gonzales appointed the Federal Public Defender to represent Dunn and directed briefing with the following for specific questions to be addressed initially by Petitioner:

> (a)   Did the [NMSC] reject [Dunn's] petition for writ of habeas corpus on the ground that it was untimely, or did it resolve the petition on the merits?
>
> (b)   Given that [Dunn] failed to file an out-of-time direct appeal with the New Mexico Court of Appeals – as permitted by the state order entered February 5, 2016 – did the conviction become final 30 days later, notwithstanding the NMSC certiorari appeal on habeas relief?
>
> (c)   Was Petitioner improperly denied the assistance of counsel in connection with the out-of-time direct appeal? If so, can such defect

> impact the federal proceeding based on the apparent failure to exhaust that particular Sixth Amendment claim?
>
> (d)     Does the Petition otherwise succeed on the merits?

*Doc. 21* at 2. Both the Amended Brief submitted by Petitioner *(Doc. 31)* and Respondents' Answer Brief *(Doc. 34)* go into great detail in answering the first three questions posed by the Tenth Circuit. In essence, the parties agree that the NMSC resolved the state petition on the merits,[12] but they disagree as to whether this federal habeas petition was timely filed.

Ultimately, however, Respondents ask the Court to proceed to the merits of the federal petition, and they waive the exhaustion requirement "to the extent that the denial of counsel in connection with Mr. Dunn's out-of-time direct appeal implicates his obligation to exhaust available state-court remedies." *Doc. 34* at 17. The Court therefore finds that Respondents' counsel has unambiguously waived the exhaustion requirement as is permitted by § 2254(b)(3) and additionally has implicitly waived the timeliness requirement as well by requesting a decision on the merits.[13] Accordingly, the Court will proceed to the fourth question concerning the merits of Dunn's claims.[14]

---

[12] *See Doc. 31* at 7 (Petitioner) and *Doc. 34* at 11 (State). Moreover, the Court notes the federal presumption that a state court "adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Doc. 34* at 12 (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011)). As both the policy and practice in New Mexico courts and the federal presumption indicate that the NMSC decided the writ on the merits, the Court will proceed with that premise.

[13] Respondents' counsel specifically asks the Court to consider the merits of Dunn's claims without further reference to any procedural barriers. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012) (a state demonstrates its waiver of a requirement when a state acknowledges its clear and accurate understanding of the procedural issue and "deliberately steer[s] the District Court away from the question and towards the merits of [a] petition.").

[14] Moreover, as the Tenth Circuit noted in its remand order, "the procedural issue[s] can be bypassed if the district court determines that the [§ 2254 petition] fails on the merits." And, indeed, that is my conclusion and recommended disposition.

II.     **Petitioner's Claims**

The federal petition basically alleges three grounds for relief. First, Petitioner

contends that the State violated his Sixth Amendment right to a speedy trial when there

was an almost 34-month delay between the time he was indicted on July 31, 2003, and

the start of his trial on May 2, 2006. *Doc. 31* at 14-15. Second, Petitioner argues that the

State violated his substantive Due Process rights because the jury instructions for the

CSP and kidnapping offenses did not ask the jury to make factual findings on all

required elements of those crimes. *Id*. at 26-27. Third, Petitioner asserts ineffective

assistance of counsel on four grounds later discussed in detail. *Id*. at 30-33.

III.    **Discussion**

        *A.  Standard of Review*

The AEDPA establishes a standard of deference for a federal court's review of

habeas corpus petitions brought by state prisoners. *See Fairchild v. Workman*, 579 F.3d

1134, 1158 (10th Cir. 2009). If a state court addresses a claim on the merits, a federal

court cannot grant an "application for a writ of habeas corpus" unless the state-court

decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of clearly established Federal law, as determined by the
> Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

*Simpson v. Carpenter*, 912 F.3d 542, 562 (10th Cir. 2018) (quoting § 2254(d)). These

standards apply to decisions on the merits regardless of whether the state opinion is

expansive or conclusory.

Yet even if the state court decision is found to be "contrary to" or "unreasonable"

and a violation of constitutional dimension, habeas relief may not issue unless the

violation is of a sort that warrants such relief. *Williams v. Taylor,* 529 U.S. 362, 375 (2000) ("the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas"). It is well settled that "[h]abeas relief may be granted only if 'there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents.'" *Hawes v. Pacheco,* 7 F.4th 1252, 1263 (10th Cir. 2021) (quoting *Coddington v. Sharp,* 959 F.3d 947, 953 (10th Cir. 2020) (further citation omitted)).

Because the NMSC summarily denied Dunn's request for a writ of certiorari, the "look-through rule tells a federal habeas court to ignore the unexplained order and focus upon the last reasoned state court decision," which in this case is Judge McDonald's "Order on Petitioner's Writ of Habeas Corpus." *See Brecheen v. Reynolds*, 41 F.3d 1343, 1358 (10th Cir. 1994) (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 803-05 (1991)).

### B.  Analysis of Claims

#### 1.  Speedy Trial Claim

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. That right to a speedy trial is fundamental and applies to state court proceedings through the Fourteenth Amendment. *Klopfer v. State of N.C.*, 386 U.S. 213, 223 (1967). The right "attaches when the defendant is arrested or indicted, whichever comes first." *United States v. Medina*, 918 F.3d 774, 779 (10th Cir. 2019) (quotations omitted). The right to a speedy trial protects a defendant's interests but also has a concomitant role in protecting societal interests. *Barker v. Wingo*, 407 U.S. 514, 519 (1972).

In *Barker*, the Supreme Court adopted a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530. "Courts applying the *Barker* test must balance the following factors: '(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.'" *United States v. Margheim*, 770 F.3d 1312, 1325-26 (10th Cir. 2014) (quoting *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006)). "No single factor is determinative or necessary, rather all four are considered to determine whether a violation has occurred." *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) (citing *Barker*, 407 U.S. at 533).

The state court correctly identified the Sixth Amendment as delineated in *Barker* as the clearly established federal law applicable to speedy trial claims. *See Record* at 306. After examining and weighing each *Barker* factor, Judge McDonald determined that Dunn's speedy trial rights had not been violated. When a court identifies the appropriate legal principals in analyzing a constitutional claim, a federal court is limited to examining whether the court unreasonably applied those principles to the facts in the case under review. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "Habeas relief is only available if there is no possible balancing of the factors that both supports the [state court's] decision and is not contrary to clearly established Supreme Court precedent." *Jackson v. Ray*, 390 F.3d 1254, 1266-67 (10th Cir. 2004).

"The first *Barker* factor involves a 'double inquiry.'" *United States v. Muhtorov*, 20 F.4th 558, 638 (10th Cir. 2021) (citing *Medina,* 918 F.3d at 780) (further citation omitted). A speedy trial analysis is triggered only when the delay "crosse[s] the threshold dividing ordinary from 'presumptively prejudicial . . . .'" *Seltzer*, 595 F.3d at

1176 (citations omitted); *see also United States v. Frias*, 893 F.3d 1268, 1272 (10th Cir. 2018). In federal courts, "[d]elays 'approaching one year' generally are sufficient to trigger review of all the *Barker* factors." *Muhtorov*, 20 F.4th at 658 (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). If the delay is presumptively prejudicial, then a court must consider the length of the delay together with the other factors. *Id*.

New Mexico courts diverge slightly from the federal one-year standard by considering the length of the delay in tandem with the complexity of the case. New Mexico cases establish a presumptively prejudicial delay threshold of 12 months for simple cases, 15 months for intermediate cases, and 18 months for complex cases. *See State v. Garza*, 212 P.3d 387, 402 (N.M. 2009). Here, there was just under a 34-month delay between Dunn's arrest and his trial. Because the delay exceeded each of these thresholds, the SCO found the delay to be presumptively prejudicial. The parties and this Court agree with that finding.

Once a court establishes presumptive prejudice, the court should consider the next factor – the reason for the delay. "The government has the burden 'to present acceptable reasons for the delay.'" *Medina*, 918 F.3d at 780 (quoting *Margheim*, 770 F.3d at 1326). "*Barker* instructs that 'different weights should be assigned to different reasons.'" *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Barker*, 407 U.S. at 531). As the Supreme Court elucidated in *Barker*,

> [a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531.

The SCO attributed the reason for the delay entirely "to [Dunn's] mental state, behavior in court, *and* in pleadings, all warranting a competency evaluation . . . ." *Record* at 306 (emphasis in original). As Judge McDonald further observed, "[o]nce competency is questioned, a competency determination must be made, and unfortunately, it is a process, which often takes too long." *Id.* at 306-07. The state district court concluded that this factor weighed in favor of the State.

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992) (further citation omitted); *see also Grant v. Royal*, 886 F.3d 874, 892-93 (10th Cir. 2018) (discussing the difference between substantive and procedural competency claims). "A defendant is competent to stand trial if he has 'the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" *United States v. Landers*, 564 F.3d 1217, 1221 (10th Cir. 2009) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). Because competency is essential to providing due process to the accused, a detainee "can not complain of the denial of his constitutional right to a speedy trial because of his confinement in a State mental institution . . . for the very purpose of determining his competency to stand trial." *Johnson v. United States*, 333 F.2d 371, 374 (10th Cir. 1964).

Dunn asserts that he was not incompetent, that "his attorney requested a competency evaluation simply because he espoused the views of the Sovereign Citizens movement." *Doc. 31* at 19. In support this argument, Dunn cites a Sixth Circuit

case, *United States v. Gooch*, 595 F. App'x 524, 527 (6th Cir. 2014) (unpublished), and a Seven Circuit case, *United States v. James*, 328 F.3d 953 (7th Cir. 2003), which discuss unusual beliefs as indicia of incompetency. These cases are inapposite.

At issue in *Gooch* and *James* is whether a district court improperly *denied* the defendants who proclaimed Sovereign Citizen and Moorish national beliefs a competency examination. Both found that unusual beliefs, without more, did not demonstrate incompetency. *See James*, 328 F.3d at 955 ("[P]ersons of unquestioned competence have espoused ludicrous legal positions"); *Gooch*, 595 F. App'x at 527 ("[M]erely believing in fringe views does not mean that someone cannot cooperate with his lawyer or understand the judicial proceedings around him."). Neither case is helpful to Dunn. While declaring Sovereign Citizen beliefs may not be *per se* evidence of incompetency, it does not follow that the inverse – an individual who espouses Sovereign Citizen tenets is indisputably competent – is true.

Contrary to Petitioner's view, *see Doc. 34* at 19-20, significant evidence beyond his expression of Sovereign Citizen beliefs put Dunn's competency at issue. As Respondents note, an evaluation was indicated given "Dunn's numerous and rambling self-authored pleadings, as well as his apparently observable and concerning conduct in the courtroom" prior to placement at LVMC for treatment to attain competency. *Id.* at 19. In his pro se memorandum in support of habeas relief, Dunn premised some ineffective counsel arguments on his trial counsel's failure to investigate facts that would actually support the need for a competency evaluation. For instance, Dunn himself describes as "bizarre" his statement – "What took you so long?" – to the officer responding to the scene of the crime. Dunn also indicates that he was "'catatonic' shortly after being taken

into custody" and was subject to increased close observation when detained at the SCDC. *Doc. 2-2* at 3. Most importantly, Judge McDonald also based the need for a competency evaluation on his own observations of Dunn's behavior during pretrial court proceedings.

Unless a state court's findings of fact regarding mental competency are clearly erroneous, a federal court must defer to a state court's conclusions. *Arnold v. United States*, 432 F.2d 871, 874 (10th Cir. 1970). While Petitioner points to other facts indicative of competence, such as his well-analyzed speedy trial briefs, those facts are not enough to outweigh the clearly erroneous standard that guides this Court. The standard is high and difficult to overcome especially where, as here, the state court's conclusions were based, in part, on his personal observations of Dunn.

But the state court unreasonably weighed this factor wholly against Dunn. In *Barker*, the Supreme Court held that the government bears the responsibility for ensuring that cases proceed through the courts in a timely manner. *Barker*, 407 U.S. at 531; *see also Jackson,* 390 F.3d at 1261 ("The Supreme Court places the burden on the state to provide an inculpable explanation for delays in speedy trial claims."). "The second factor, the reason for the delay, 'weighs against the government in proportion to the degree to which the government caused the delay.'" *Yehling,* 456 F.3d at 1244 (quoting *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006)). "Negligence and crowded court dockets, for example, weigh against the government, but less heavily than delays deliberately sought to gain improper advantage." *Batie*, 433 F.3d at 1291.

Petitioner contends that the delay in this case should be attributed to the failure by the State to ensure that a timely competency exam occurred. The Court has carefully

reviewed the entire record to determine the causes of the delay with regard to the competency issue and will now set those forth with greater specificity.

Judge McDonald entered the first order for a competency evaluation on November 3, 2003, at the oral request of original defense counsel, Thomas Garde. *Record* at 11. This order directed that a local competency examination be performed by Dr. *Lori* Martinez "to determine his competency to stand trial and his amenability for treatment." *Id.*

Leonard Foster was substituted as counsel for Dunn on December 23, 2003, and one month later, he filed a written motion for a local competency evaluation. *Record* at 546. Judge McDonald granted the motion that very day, but this time ordering Dr. *Susan* Martinez to "conduct a psychiatric evaluation" and to "furnish a written report" to both sides and the court. *Record* at 14. However, on February 4, 2004, Foster asked that Judge McDonald order Dunn to be transported to the office of Dr. *Lori* Martinez on February 25, 2004, for an evaluation. It is possible that there may have been some confusion as to which medical provider was to perform the mental assessment.

However, it is clear that Dunn refused to cooperate so that no local mental examination occurred, and therefore no local report was filed. *Record* at 61. Indeed, Dunn criticizes Judge McDonald's finding at the July 26, 200 hearing that he was "a threat to society due to what he considered [Dunn's] lack of cooperation." *Record* at 42. As Dunn explained in a state post-trial pleading,

> Mr. Arite [the state deputy district attorney] questioned me if I had refused to take a competency examine [sic]. I answered that I had refused. Mr. Arite was trying to mischaracterize my actions by the way the question was presented. This testimony was, however, incorrect, I misspoke. The Undersigned never refused to take a competency examine [sic], I in fact chose to exercise my right to remain silent . . . .

*Record* at 134.[15] Nevertheless, Judge McDonald would have reasonably understood from Dunn's statements at the hearing that it was his refusal to cooperate with a local evaluation that had precipitated the delay. At a minimum, Dunn's pronounced refusal to cooperate would have raised significant concerns as to his "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense" which due process mandates. The Clerk's Receipt entry for July 26, 2004 – "Competency Hrg./eval. LVMC" – seems to indicate that Judge McDonald discussed the local evaluation delay and may have reasonably concluded that an LVMC psychological evaluation might be needed if Dunn persisted in his refusal to talk with the local evaluator. *Record* at 40.

At a status hearing held on January 10, 2005, the competency issue was again raised. *Record* at 305; *see also Record* at 52 (Clerk's Receipt notation "Pre-Trial/check on competency"). A little over a month later on February 17, 2005, Judge McDonald found Dunn was incompetent to proceed to trial and entered an order of commitment to LVMC for "treatment to attain competency to stand trial."[16] *Record* at 53-55.

However, at a July 14, 2005 hearing, it became clear that Dunn had not yet been transported to LVMC. As Dunn recounts in his pro se state habeas petition, "when questioned in open court by Judge McDonald, as to the delay in taking me to LVMC, Mr. Arite stated there was no space available." *Record* at 138. However, at this hearing

---

[15] Dunn has also complained in post-trial pleadings that that Foster "[f]ailed to discuss with me the scope and nature of the Psychological evaluation and the advisability of undergoing the examination . . . ." *Record* at 284.

[16] Petitioner's counsel indicates that "[i]n reality, no psychologist or psychiatrist had evaluated Mr. Dunn so the commitment was to evaluate his competency." *Doc. 31* at 2. He does not elaborate as to whether local evaluations were scheduled and attempted but unsuccessful due to Dunn's failure to cooperate.

"[c]ounsel alerted the Court that a bed would be available at LVMC on August 18, 2005." *Record* at 305. Judge McDonald therefore entered an order requiring Dunn to be transported to LVMC on that date, and it is undisputed that this took place.

Clearly, Dunn had no control over when or where the LVMC competency evaluation and treatment would take place or how long it would take to be declared competent to proceed to trial. It would seem incumbent on the court, the government and defense counsel to monitor to assure that necessary competency evaluations were performed and necessary treatment provided. Unfortunately, the record fails to reflect the degree of diligence expected in meeting that obligation. *See, e.g., United States v. Tigano*, 880 F.3d 602, 614 (2d Cir. 2018) (finding that the failure to provide timely transportation to a competency evaluation weighed against the state). Thus, this factor should have weighed, at least in part, against the State. Of course, Dunn's refusal to provide necessary information for any mental evaluation should also be considered.

Factor three examines whether a defendant affirmatively asserted his right during the delay period. Acknowledging that Dunn twice affirmatively asserted his speedy trial rights in pro se filings, the state district court found that this factor weighed in Dunn's favor. While Petitioner agrees with this conclusion, he appears to dispute the weight the state court accorded this factor, observing that "'[t]he defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of this right.'" *Doc. 31* at 22-23 (quoting *Barker*, 407 U.S. at 531-32). But Petitioner has not pointed to anything in the record that suggests that the state court weighed this factor unreasonably.

The fourth factor focuses on "prejudice to the defendant" from the delay, and here Petitioner bears the burden of showing prejudice. *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009). To meet this burden, Petitioner may show that the length of the delay was presumptively prejudicial. *Id.* "Generally, the court requires a delay of six years before allowing the delay itself to constitute prejudice." *Seltzer*, 595 F.3d at 1180 n.3. The delay here is less than six years, so Petitioner cannot avail himself of presumptive prejudice.

In the absence of presumptive prejudice, Petitioner must provide evidence of prejudice with "sufficient particularity." *Margheim*, 770 F.3d at 1329. A court therefore examines the impact of the delay on three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "[A] lack of prejudice is 'nearly fatal' to a claim." *United States v. Nixon*, 919 F.3d 1265, 1278 (10th Cir. 2019) (internal quotations and citation omitted); *see also Margheim,* 770 F.3d at 1329 ("in most circumstances, failure to specify prejudice will eviscerate the defendant's [speedy-trial] claim.").

As to the first and second interests, Petitioner disagrees with the state court finding that he had not demonstrated "oppressive pretrial incarceration and anxiety." *Record* at 307. Petitioner asserts that the pretrial delay was oppressive as "he lived in fear because his charges included a sex-crime and other inmates did not look kindly upon sex-offenders and often beat them badly." *Doc. 31* at 24. Yet, his claims of fear and anxiety are not tied to any specific incident or person. Petitioner does not identify an

inmate who caused him physical or emotional harm, nor does he allege that he witnessed another detainee being beaten or was beaten himself.

"A defendant must allege 'special harm suffered which distinguishes his case from that of any other arrestee awaiting trial.'" *Muhtorov*, 20 F.4th at 654 (quoting *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994). "[G]eneralized and conclusory references to the anxiety and distress that purportedly are intrinsic to incarceration are not sufficient to demonstrate particularized prejudice." *United States v. Larson*, 627 F.3d 1198, 1210-11 (10th Cir. 2010). Simply put, Dunn's statements about his anxiety and fear do not meet the required specificity to establish prejudice.

The final inquiry is to whether the delay impaired Dunn's defense. "[T]he most serious [interest] is the 'hindrance of the defense' because the inability of a defendant to adequately prepare his cases skews the fairness of the entire system." *United States v. Jumaev*, 20 F.4th 518, 543 (10th Cir. 2021) (quoting *Seltzer*, 595 F.3d at 1179-80) (further citation omitted). The Tenth Circuit has "held that a defendant should show 'that the delay resulted in the loss of specific evidence or the unavailability of certain witnesses.'" *Jumaev*, 20 F.4th at 543 (quoting *Frias*, 893 F.3d at 1273). Here, Judge McDonald concluded that Dunn made "no showing that the pretrial delay impaired his defense." *Record* at 307.

Petitioner makes only the generalized assertion that "a delay of three-years causes memories to fade." *Doc. 40* at 5. To show impairment from lost testimony, however, Petitioner must (1) "state with particularity what . . . testimony would have been offered"; (2) " 'present evidence that the delay caused the . . . unavailability'"; and (3) "establish that he 't[ook] steps, when possible, to preserve testimony.'" *Jumaev*, 20

F.4th at 543 (quoting *Jackson*, 390 F.3d at 1265 (internal citations and alterations omitted)).

On the first prong, Petitioner contends that the victim "likely could not remember" whether her injuries were from consensual activity or from her encounter with Dunn. *Doc. 31* at 24-25. Petitioner argues that had his trial occurred earlier, the victim might have testified that her injuries came from a prior sexual encounter. Without proof that Dunn caused her vaginal injuries, Petitioner contends, a jury could only have convicted him of a third-degree felony, which would have reduced his sentence by six years. *Doc. 31* at 25. This argument is both speculative and not supported by the record.

First, the victim testified in detail that Dunn caused all of her injuries. *Recording CD 4* at 32:26 (describing being hit in the face among other injuries). Petitioner does not point to anything indicating that the victim lacked memory on pertinent facts. Second, the state court properly denied Dunn's counsel from inquiring into the victim's sexual history at trial. *Id.* at 40:22-56:51. Petitioner supplies no evidence, much less explains, why the state court would have ruled differently on this issue if the trial had occurred earlier.

Moreover, the victim was not the only witness testifying about her injuries. The sexual assault nurse examiner ("SANE nurse") who conducted the victim's examination stated that the victim's injuries were not consistent with consensual sexual activity. *Recording, CD 5, Track 2* at 35:40. The victim's injuries were all over her body, including bruising and pain on her wrists and back, and pain in her jaw. *Id.* at 29:44 (testimony of SANE nurse describing these injuries).

Viewed as a whole, Dunn's hypothetical evidence cannot support his claim that the delay created any cognizable hindrance to his defense. *See Margheim*, 770 F.3d at 1331 ("criminal defendants [must] 'show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided the defense'") (internal quotations and additional citations omitted). Thus, on this most important inquiry, Petitioner fails to demonstrate that the delay prejudiced his ability to defend at trial.

Balancing the factors constitutes the final step in the *Barker* analysis. *Jackson*, 390 F.3d at 1266. The state court applied the correct standard when it weighed the first, third, and fourth factor. As for the second factor, the court should have recognized that the delay was not solely within Dunn's control and that the State bore some responsibility. Ultimately, though, this mistake was harmless. Petitioner's failure to identify any prejudice to his interests reinforces the state court's conclusion that Dunn's constitutional speedy trial rights were not violated.

### 2.  Erroneous Jury Instructions

Petitioner next contends that his substantive due process rights were violated when the jury instructions for both his kidnapping and CSP charges omitted essential elements of the offenses. "Taken together," the Sixth and Fourteenth Amendment "indisputably entitle a criminal defendant to 'a jury determination that [the accused] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Hawes,* 7 F.4th at 1256 (alteration in original) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000)).

Importantly, though, an instruction that omits an element of an offense is an error subject to harmless error analysis. *Neder v. United States*, 527 U.S. 1, 15 (1999). "[O]n

collateral review, the harmless error inquiry is 'whether the error had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Rivera*, 347 F.3d 850, 852 (10th Cir. 2003) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)) (further citations omitted). While this is a more lenient standard, the burden of persuasion remains on the government and thus, "when a court is in virtual equipoise as to the harmlessness of the error . . . the court should treat the error as if it affected the verdict." *Fry v. Pliler*, 551 U.S. 112, 121 n.3 (2007).

### a. Kidnapping Instructions

The indictment charged Dunn with Kidnapping (Great Bodily Harm). In New Mexico, first-degree kidnapping is a felony punishable by a statutory sentence of 18 years of incarceration. In 2003 when Dunn committed his crimes, the kidnapping statute provided in relevant part:

> A. Kidnapping is the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception with intent: . . . (4) to inflict death, physical injury or a sexual offense on the victim.
> B. Whoever commits kidnapping is guilty of a first degree felony, except that he is guilty of a second degree felony when he voluntarily frees the victim in a safe place and does not inflict great bodily harm upon the victim.

N.M. Stat. Ann. § 30-4-1 (2003).

In a rather confusing configuration, New Mexico's 2003 Uniform Jury Instructions split the elements for proving first-degree kidnapping into two instructions. As interpreted by the appellate courts, the first instruction – NMUJI 14-403 – set forth the essential elements for kidnapping in the second degree as identified in subsection (A) of the statute. The applicable use notes for NMUJI 14-403 then indicated that "[i]f first degree kidnapping is an issue, Instruction 14-6018 is also given."

Thus, the second jury instruction necessary to prove kidnapping in the first-degree was NMUJI 14-6018 (a special verdict form), which necessitated jury findings relative to subsection (B) of the statute. For crimes committed in 2003 implicating first-degree kidnapping, the jury was to decide whether "the defendant did not voluntarily free [name of victim] in a safe place" and whether "the defendant inflicted great bodily harm on [name of victim]." A first-degree conviction was established if the jury answered "yes" to either or both of these questions. Use Notes to NMUJI 14-6018. In the absence of such findings, the defendant would be found guilty of kidnapping in the second degree which carried a lesser sentence.

At trial, Judge McDonald correctly instructed on the elements of kidnapping set forth in UJI 14-403. That is, the court's "Instruction 18" advised the jury that to convict Dunn of kidnapping as charged, the jury must find beyond a reasonable doubt that "(1) The Defendant restrained or confined the victim by force; (2) the Defendant intended to hold the victim against her will to inflict a sexual offense on [her]; and (3) this happened in Sandoval County, New Mexico on or about the 21st day of July 2003." *Record* at 113.

However, the jury was not given NMUJI 14-6018's special verdict form and, therefore, was not asked to find whether Dunn inflicted great bodily harm or freed the victim in a safe place. Petitioner contends here, as he did in the state habeas proceedings, that the failure of the jury to make the special verdict form findings makes his first-degree kidnapping conviction unconstitutional and "constitutes a deprivation of his right to due process and his right to a jury trial and must be vacated." *Doc. 31* at 29.

In his SCO, Judge McDonald acknowledged that he had not given the special verdict form, but denied habeas relief, nonetheless. In finding that the error had not harmed Dunn, Judge McDonald relied on *State v. Dominguez*, 327 P.3d 1092 (2014), which he found to be "analogous and almost identical." As described below, however, this reliance was misplaced.

In the 2014 *Dominguez* decision, the New Mexico Court of Appeals ("NMCOA") examined the effect of an omission of the special verdict form on a conviction for first-degree kidnapping. Just as here, the defendant in *Dominguez* was convicted of first-degree kidnapping and CSP. Similarly, the jury did not receive the special verdict form for the first-degree kidnapping charge. There, the trial court found that special verdict form findings were mandatory for a first-degree conviction and reduced the kidnapping conviction to second degree.

The NMCOA in *Dominguez* first noted that the NMSC had earlier relied on non-binding committee commentary "to conclude that the elements in UJI 14-403 'only establish the offense of second-degree kidnapping.'" *Id.* at 1099 (citing *State v. Gallegos*, 146 N.M. 88 (2009)). To rise to the level of a first-degree conviction, a jury must find that the government established the additional elements for subsection (B) of the kidnapping statute set forth in the special verdict instruction. As the NMSC explained,

> [t]he elements set forth in the [14-6018] special verdict form are not affirmative defenses that must be raised by a defendant at trial. Rather, it is the State's burden to prove the elements contained in the special verdict form in order to obtain a conviction for first-degree, rather than second-degree, kidnapping.

*Gallegos*, 146 N.M. at 93. The *Dominguez* court noted that the binding use notes to UJI 14-403 at the time directed that UJI 14-6018 be given "[i]f first[-]degree kidnapping is an issue" and that failure to give a mandatory instruction "on the law essential for a conviction" could constitute "reversible error." *Id.* at 1099-1100.

Nevertheless, the NMCOA concluded that no error had occurred in that case. In 2003, the New Mexico legislature amended the kidnapping statute, but that amendment did not go into effect until February 2004. Subsection (B) was amended to read "[w]hoever commits kidnapping is guilty of a first[-]degree felony, except that he is guilty of a second[--degree felony when he voluntarily frees the victim in a safe place and ***does not inflict physical injury or a sexual offense upon the victim***." N.M. Stat. Ann. § 30-4-1 (2003) (emphasis added). Significant here, the amendment removed the narrowly defined element "great bodily harm" applicable in Dunn's case and replaced it with two broader elements: "physical injury" or a "sexual offense." The jury instructions and special verdict form were also amended to reflect the change.

Judge McDonald analogized *Dominquez* to the facts in Dunn's case. He reasoned that Dunn's CSP conviction, just as in the *Dominguez* case, supplied the necessary jury finding on the omitted element – sexual offense – for a first-degree conviction. Therefore, Judge McDonald concluded, Dunn's constitutional rights had not been violated. *Record* at 310.

But the analogy to *Dominguez* injected a fatal flaw in the analysis. Judge McDonald's opinion made no mention of the differences between the 2003 first-degree elements and the amendments that took effect in 2004 and applied in the *Dominguez* case. When Dunn kidnapped his victim in 2003, commission of a sexual offense during

the crime was *not* an element elevating the kidnapping to first degree. Rather, the statute then defined different elements for first-degree kidnapping – that the defendant had inflicted "great bodily harm" on the victim or had failed to voluntarily release the victim in a "safe place." Thus, unlike the *Dominguez* case, the jury's finding that Dunn had committed the CSP offense could not satisfy a factual finding for either of the applicable elements for first-degree kidnapping.

It is easy to see why the confusion arose given: the unusual structure of the kidnapping statute with the factors in subsection (B) being defined as elements to raise, rather than mitigating factors to lower, the degree of the crime; the use of two jury instructions, one of them in the form of a special verdict form; and amendments to both the governing statute and the uniform jury instructions to be used. Indeed, the year following the *Dominguez* decision, the NMSC rewrote the uniform jury instructions to create separate instructions for first-degree kidnapping (UJI 14-403) and second-degree kidnapping (UJI 14-403A).

> Previously, first and second-degree kidnapping relied on a single elements instruction, and the differentiating elements were instructed only through special interrogatories, leaving the court to determine the appropriate offense degree. Because this approach may lead to confusion in differentiating first and second-degree kidnapping, separate instructions were created for first and second-degree kidnapping that incorporate the distinguishing findings as essential elements. *See, e.g., State v. Dominguez*, 2014-NMCA-064, ¶¶ 13-19, 327 P.3d 1092 (noting that only second-degree kidnapping could be imposed if the interrogatories were not given, but relying on the jury's guilty verdict for separately charged sex offense to satisfy the finding that a sex offense was inflicted during the kidnapping) (citing *State v. Gallegos*, 2009-NMSC-017, ¶ 13, 146 N.M. 88, 206 P.3d 993).

NMUJI 14-403, Committee Commentary (changes effective for all cases pending or filed on or after December 31, 2015).

But the parties do agree, and this Court finds, the state court mistakenly found that it did not err in failing to give the omitted elements special verdict form. According to Petitioner, this omission of an element is structural error, and "[a] structural error's result is 'always a fundamentally unfair one.'" *Doc. 40* at 8-9 (quoting *Weaver v. Massachusetts,* 137 S. Ct 1890, 1907). Structural error, the Supreme Court has explained, is a constitutional deprivation "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Errors that fall into this category include "'denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt.'" *Greer v. United States*, ___ U.S. ___, 141 S. Ct. 2090, 2100 (2021) (quoting *United States v. Davila*, 569 U.S. 597, 611 (2013)).

The United States Supreme Court, however, has expressly found that omission of an element of an offense "does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U.S. at 8. Indeed, where it is uncontested that the charge to the jury omitted an element of the offense, the reviewing court must apply the "harmless-error analysis."[17] *Id.* at 15. The *Neder* court reasoned,

> in other cases, we have recognized that improperly omitting an element from the jury can "easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis." In both cases – misdescriptions and omissions – the erroneous instruction precludes the jury from making a finding on the actual element of the offense . . . .

---

[17] As the Tenth Circuit observed, the Supreme Court in *Neder* held that "the omission of an element of the offense from the jury instructions is subject to harmless error analysis on direct appeal. Given the limited and special nature of habeas review, we have no reason to believe the Supreme Court would endorse a more demanding standard for analyzing the omission of an element on habeas review." *Scoggin v. Kaiser*, 186 F.3d 1203, 1207 (10th Cir. 1999).

*Id.* at 9-10 (citations and quotations omitted). When performing the harmless error inquiry,

> safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error – for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding – it should not find the error harmless.

*Id* at 19.

Here, the state court identified the correct governing federal legal principle and applied the harmless error analysis, albeit incorrectly applying state law, when finding that the CSP conviction established the "sexual offense" omitted element that it deemed necessary for a first-degree kidnapping conviction. This misunderstanding of state law (i.e., that commission of a sexual offense was an element of first-degree kidnapping) does not undermine Judge McDonald understanding of the applicable federal legal principle – use of the harmless error analysis as to the omitted element instruction.

An error is harmless unless it resulted in "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623 (quotations omitted); *see also Fry,* 551 U.S. at 121. Focusing solely on the "safe release" element, Respondents contend that "there is no possible construction of the evidence under which a reasonable jury could conclude that [Dunn] who opened the front door only upon Officer Gentry's knock and announce, freed [the victim], voluntarily or otherwise." *Doc. 34* at 25. The "safe release" element requires a jury to make two factual findings for a first-degree kidnapping conviction: (1) that "Defendant did not voluntarily free [the victim]; or (2) if Defendant voluntarily freed [the victim], that [victim] was not freed in a safe place." *State v. Laguna*, 992 P.2d 896, 902 (N.M. Ct. App. 1999), *cert. denied,* 128

N.M. 149 (1999). When examining the state court's factual findings, the Court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Of special significance here, in his SCO Judge McDonald *explicitly* found that "witness testimony made clear that the victim was not voluntarily freed." *Record* at 310.[18] That very finding, if made by the jury beyond a reasonable doubt, would establish kidnapping in the first degree. As noted earlier, I carefully listened to all the testimony given at trial and absolutely agree with Judge McDonald's finding.

There was absolutely *no* evidence that could support *any* finding that Dunn voluntarily released the victim. When the officer arrived at the scene, the victim was screaming and struggling as Dunn was digitally penetrating her. The partially clothed victim was found cowering under a piano and still wearing the handcuffs Dunn had used to restrain her. The fact that Dunn was caught in the act and opted to open the door rather than face a violent confrontation with law enforcement could not equate, *in any way*, to voluntarily releasing the victim. Having given meticulous review of the evidence received by the jury, this Court concludes beyond a reasonable doubt that a jury would have so found had it been given the 14-1618 special verdict form. Because the error was harmless, habeas relief is unavailable to Petitioner as to the first-degree kidnapping conviction.

---

[18] "Any state-court findings of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by 'clear and convincing evidence.'" *Grant*, 886 F.3d at 889 (quoting § 2254(e)(1)).

### b.  CSP Instructions

Petitioner next argues that the CSP II conviction was unconstitutional because the jury did not receive an instruction requiring it to find beyond a reasonable doubt that Dunn committed the sexual act "without consent." Because Dunn did not bring this argument before any state court, there are no state court findings; thus, this Court may examine the claim outside the AEDPA deferential standard. *See DeRosa v. Workman*, 679 F.3d 1196, 1207 (10th Cir. 2012) (reasoning that if a state court did not resolve a claim on the merits, "§ 2254(d)'s deferential standards of review do not apply") (citation omitted).

In order to convict a defendant of CSP II, a jury must find beyond a reasonable doubt that the act was "*unlawful*" which is defined in a separate instruction. In 2003, in the context of sexual contact crimes, "unlawful" was defined as an act "done with the intent to arouse or gratify sexual desire, or to intrude upon the bodily integrity or personal safety of [name of victim]." NMUJI 14-984. But in 2005, the unlawful instruction was revised, and it is that instruction to which Dunn cites. The revised instruction defines an unlawful act as one "done *without consent* and with the intent to arouse or gratify sexual desire or to intrude upon the bodily integrity or personal safety of [name of victim] or any (other unlawful purpose)." NMUJI 14-132 (emphasis added). Petitioner contends that, in effect, the amended instruction's addition of a "without consent" element increased the State's burden for proving a CSP offense.

It is undisputed that Judge McDonald did not instruct the jury that to be unlawful, the sexual penetration must have been "without consent" of the victim. Petitioner argues that because the State did not allege that a "victim who, by age or other statutory factor,

did not or could not give consent," the unlawful instruction for his CSP II offense omitted

an essential element. *Doc. 31* at 30 (relying on *State v. Samora*, 387 P.3d 230, 241

(N.M. 2016)). This omission, Dunn contends, violated his right to due process.

In *Samora*, the NMSC considered when the omission of the phrase "without

consent" in CSP jury instructions constitutes fundamental error. The jury in *Samora*

found the defendant guilty of (1) kidnapping, (2) a CSP–Felony, which prohibits criminal

sexual contact in the commission of a felony, and (3) criminal sexual contact with a

minor. *Id.* at 240. There, the state court gave an unlawfulness instruction that omitted

the element "without consent" as to all three offenses. *Id.*

With regard to the CSP–Felony charge, the NMSC concluded that when a victim

is legally able to give consent, a failure to give the "without consent" instruction *could*

constitute fundamental error. *Id.* at 242. However, as the *Samora* court specifically

noted, "[f]undamental error only applies in exceptional circumstances when guilt is so

doubtful that it would shock the judicial conscience to allow the conviction to stand." *Id.*

(quoting *State v. Stevens,* 323 P.3d 901, 911-12 (N.M. 2014)). Because there was

potential evidence of consent and of jury confusion as to the meaning of "unlawful," the

*Samora* court found fundamental error as to both the CSP II–Felony and kidnapping

convictions and sent the case back to district court for retrial.

But *Samora* is clearly distinguishable. As Justice Charles Daniels observed in the

*Stevens* opinion cited by *Samora*,

> *when a CSP II charge is based on the commission of a felony*, it must be a
> felony that is committed against the victim of, and that assists in the
> accomplishment of, sexual penetration perpetrated by force or coercion or
> against a victim who, by age or other statutory factor, gave no lawful
> consent.

*Stevens*, 323 P.3d at 910 (emphasis added). Here, however, Dunn's CSP II charge was not premised on the CSP II–Felony provision of the statute, § 30-9-11(E)(5).

Instead, the indictment and jury instructions were based on § 30-9-11(E)(3), which prohibits "all criminal sexual penetration perpetrated" by "the use of force or coercion that results in personal injury to the victim." Judge McDonald accurately instructed the jury that for a CSP conviction under Subsection (E)(3), it was required to find beyond a reasonable doubt that in committing the offense, Dunn "used physical force or physical violence" and that those acts resulted in "bruising to [the victim's] face and body and injury to her vagina." *See Recording of Trial, May 3, 2003, CD 7, Track 1* at 5:26. No "without consent" instruction was necessary.

But even if the "without consent" instruction was required, Judge McDonald's failure to give the instruction would constitute harmless error in this case. As Respondents point out, all of the evidence is absolutely inconsistent with consent because the undisputed evidence established that the victim

> (1) tried to close the front door on Mr. Dunn, causing him to force his way into her house; (2) attempted to escape before being trapped by Mr. Dunn in her garage; (3) dislodged a post from a workbench to which she had been clinging in a losing effort to resist Mr. Dunn's literal pull on her legs; (4) subsequently tried to brace herself in a door frame to keep from being dragged back into the house; (5) made efforts to reason Mr. Dunn out of raping her; (6) repeatedly pleaded with Mr. Dunn, who had overpowered, handcuffed, and pinned her to the floor, to stop and leave her home; (7) screamed for help so loudly that her cries caused a neighbor to call 911; (8) was discovered by Officer Gentry "extremely upset, distraught[,]" and cowering under a piano; and (9) sustained multiple bodily injuries, one so severe that she was referred to the emergency room following her SANE examination.

*Doc. 34* at 22. In short, if Judge McDonald had given a "without consent" instruction, it would not have changed the outcome of the trial.

In summary, I recommend that the Court deny habeas relief to Petitioner on his "omitted jury instruction" claims.

### 3.  Ineffective Assistance of Counsel Claims

Petitioner contends that his trial counsel was ineffective on four grounds: (1) Foster asked the state court to order an unnecessary competency evaluation; (2) Foster failed to explain adequately the State's plea offer; (3) Foster failed to ask for a hearing on whether the victim's sexual history was relevant and at trial did not object to the SANE nurse's testimony; and (4) Foster failed to object to jury instructions that omitted elements of the charged offenses. *Doc. 31* at 31-33.

Courts evaluate ineffective assistance of counsel claims under the two-prong test described in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under *Strickland*, Dunn must show by a preponderance of the evidence both that his counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" *Simpson*, 912 F.3d at 593 (quoting *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (internal emphasis in original, further citation omitted). Courts identify these prongs as the performance prong and the prejudice prong. *See, e.g.*, *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Hooks v. Workman,* 689 F.3d 1148, 1186 (10th Cir. 2012) (internal quotations omitted). A court reviewing an ineffective assistance of counsel claim under both AEDPA and *Strickland* is "highly deferential, and when the two apply in tandem, review is 'doubly so." *Simpson*, 912 F.3d at 594 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)) (further quotation omitted).

Under the performance prong, an attorney's performance will be deficient when if falls outside "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Courts must be deferential when evaluating an attorney's performance and begin with the presumption that counsel's conduct was reasonable as "sound trial strategy." *Id*. at 689. To that end, a court must evaluate the challenged conduct from the attorney's viewpoint at the moment of the alleged error and avoid the "distorting effects of hindsight." *Id.* When examining a § 2254 petition, federal courts must "defer to the state court's determination that counsel's performance was not deficient and further, defer to the attorney's decision in how to best represent a client." *Hooks*, 689 F.3d at 1187.

The prejudice prong is met only if Petitioner shows that his counsel's deficient performance prejudiced his defense. A lawyer prejudices a defendant's defense when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A "reasonable probability" is a material error that is "sufficient to undermine confidence in the outcome." *Id.* The question under § 2254 is "not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

As discussed above, Judge McDonald addressed only one of the sixteen ineffective assistance claims made in the state habeas proceeding when he agreed with Dunn that his attorney was ineffective by failing to file a timely appeal after the trial. Because Dunn was granted habeas relief in the form of permission to file a late appeal, the state court simply stated, "Petitioner's remaining claims for relief submitted to this Court are denied" without setting forth any reasoning.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. If a merits decision is presumed, a petitioner must show that there was no reasonable basis for the state court to deny relief. *Id.* at 100.

Yet, "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 99-100 (citing *Ylst,* 501 U.S. at 803). Arguably, that is the case here. It seems just as likely that Judge McDonald denied the remaining ineffective assistance of counsel claims because those issues would be moot if Dunn was successful on the out-of-time appeal he had been granted.[19] But because the State has waived any procedural bars in this proceeding, the Court will assume that Judge McDonald examined Dunn's other ineffective assistance of counsel claims and found them without merit.

The transcript of the habeas evidentiary hearing on June 17, 2014, (*Doc. 37-1)*, provides some insight into the state court's reasoning when addressing the ineffective assistance of counsel claims. Judge McDonald expressly reminded Dunn, who was then appearing pro se, that he had to meet both the performance and the prejudice prongs set forth in *Strickland*. *See Doc. 37-1* at 104:10-15.

Petitioner argues, however, that the hearing transcript also indicates that Judge McDonald incorrectly applied the *Strickland* prejudice prong. *Doc. 40* at 13-14. Judge McDonald told Dunn that to establish prejudice, he bore the burden to establish "but for the ineffective assistance of counsel, you would have prevailed at trial." *Doc. 37-1* at

---

[19] As noted above, Dunn declined appointed counsel to prosecute the out-of-time appeal he had been granted, and, ultimately, failed to take advantage of that right to appeal.

104:12-15. If, indeed, Judge McDonald applied that standard, he would have imposed a higher standard than that demanded by *Strickland*. The proper standard requires a defendant to show only "a reasonable probability" of a different result in the proceedings in the absence of "counsel's unprofessional errors." *Strickland*, 466 U.S. at 694.

Because Judge McDonald identified the wrong prejudice prong standard, this Court agrees with Petitioner that AEDPA deference need not be shown on the prejudice prong. *See Doc. 40* at 14; *Williams v. Jones,* 571 F.3d 1086, 1090 (10th Cir. 2009). However, AEDPA deference should still apply to the performance prong. Because both prongs must be met to demonstrate ineffective assistance under *Strickland*, the Court will begin with the performance inquiry on each of Dunn's claims.

### a. Requests for a competency evaluation

Petitioner maintains that counsel was ineffective when, against Dunn's directions, they sought competency evaluations. According to Petitioner, this action shows "per se ineffective assistance of counsel" and demonstrates a "complete breakdown in communication." *Doc. 31* at 31. Petitioner's argument rests on the premise that a criminal defendant's attorney must accede to his client's instructions when the issue is competency. But the Tenth Circuit has rejected this argument.

"'[T]he Sixth Amendment . . . [does] not require that [a] public defender adhere to the defendant's apparent wish to avoid the competency issue.'" *United States v. Holloway*, 939 F.3d 1088, 1100 (10th Cir. 2019) (alterations in original) (quoting *United States v. Boigegrain*, 155 F.3d 1181, 1187 (10th Cir. 1998)). Rather, counsel must be attentive to the mental capacity of his client because the Due Process clause demands competency before a defendant can be tried. *Id.* More to the point, an attorney who questions his client's competency has a professional duty to raise it with the court.

*Holloway*, 939 F.3d at 1100 (quoting *Boigegrain*, 155 F.3d at 1188). Thus, motions for a competency examination do not constitute per se ineffective assistance of counsel.

Nor is there any evidence that Attorney Foster's decision to seek a competency evaluation otherwise fell outside the wide range of reasonableness. Foster testified that in his best judgment, Dunn manifested behavior that made him question his client's competence. Foster based his opinion on observations of and conversations with Dunn as well as a conversation he had with Dunn's previous attorney. *See Doc. 37-1* at 60:12-20. Notably, Foster's assessment of Dunn's competence is in accord with the findings made by Judge McDonald. *Record* at 306 (trial court observation of Dunn's "mental state, behavior in court *and* in pleadings, all warranting a competency evaluation").

Petitioner provides no other evidence substantiating his assertion of a complete breakdown in communication with his attorney. In fact, the evidence suggests the opposite. At the state evidentiary hearing, Foster testified that he communicated with Dunn about the elements of the offense and his possible defenses. Indeed, Dunn indicated that during those conversations, he relayed personal information to Foster. *Doc. 37-1* at 48:23– 49:19.

Finally, because Dunn and his trial counsel differed in their accounts of their attorney/client relationship, the state court must have relied on its assessment of credibility in finding that Foster provided effective assistance of counsel. A federal court's review of a state court's credibility determinations, such as those made here by Judge McDonald, is highly deferential. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). I recommend a finding that the state court properly denied relief on this claim.

**b. Advice as to the plea agreement offer**

The Sixth Amendment applies to representation during the plea process.

*Williams*, 571 F.3d at 109 (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). To establish

ineffective assistance based on the rejection of a plea agreement,

> a defendant must show that but for the ineffective advice of counsel there
> is a reasonable probability that the plea offer would have been presented to
> the court (i.e., that the defendant would have accepted the plea and the
> prosecution would not have withdrawn it in light of intervening
> circumstances), that the court would have accepted its terms, and that the
> conviction or sentence, or both, under the offer's terms would have been
> less severe than under the judgment and sentence that in fact were
> imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Petitioner contends that Foster did not

adequately explain the offered plea agreement to Dunn. Substantial evidence supports

the state court's contrary conclusion.

At the evidentiary hearing, Foster testified that there had been a plea offer, that

he discussed the plea offer with Dunn, and that in doing so, he reviewed with Dunn the

evidence the State had against him and the advantages and disadvantages of the

offered plea agreement. *Doc. 37-1* at 40:1–41:17, 58:1-15, 65:24–66:25. Foster

estimated that the proposed plea agreement would have exposed Dunn to a maximum

term of 18 years of incarceration. *Id.* at 66:1-17. And, contrary to Petitioner's

representation, Foster answered in the affirmative when Dunn asked him, "Did you ever

advise me to accept or reject a plea bargain?" *Id.* at 40:25–41:2.

Moreover, Petitioner failed to produce any evidence refuting Foster's testimony.

Dunn did not testify at the evidentiary proceeding. His questioning of Foster at that

hearing and his pleadings are the sole source of his argument that Foster did not

properly advise him properly about the plea agreement offered by the State. While

Petitioner states that Foster did not explain the plea agreement adequately, he does not identify how or why his counsel's explanation was inadequate. To the extent that Dunn maintains that he would have entered into a conditional plea preserving his speedy trial claim for appeal, nothing indicates that the state court or prosecutors would have agreed to such a condition. *See State v. Hodge*, 882 P.2d 1, 9 (N.M. Ct. App. 1994) ("[T]he critical requirements for a conditional plea are that the defendant express an intention to reserve a particular pretrial issue for appeal *and* that neither the prosecution nor the trial court oppose such a plea.") (emphasis added).

The issue of whether counsel advised Dunn about the advantages and disadvantages of his plea agreement is a factual question. A federal court must presume the correctness of a state court factual determination. § 2254(e)(1); *see also Marshall,* 459 U.S. at 434 ("§ 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Habeas relief should be denied as Petitioner fails to carry his "burden of rebutting the presumption of correctness by clear and convincing evidence." *See Brumfield v. Cain*, 576 U.S. 305, 322 (2015).

### c. Counsel's trial decisions

The Confrontation Clause guarantees a defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend VI. "A criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of *bias* on the part of the witness . . . ." *United States v. A.S.*, 939 F.3d 1063, 1073 (10th Cir. 2019) (emphasis in original) (quoting *White v. Coplan*, 399 F.3d 18, 26 (1st Cir. 2005)). Petitioner contends Foster failed to assert his confrontation rights and thereby provided

ineffective assistance when he (1) failed to ask for a rape shield hearing prior to trial,[20] and (2) failed to object to the SANE nurse's testimony. *Doc. 31* at 32-33.

According to Petitioner, there was evidence that the victim had engaged in consensual sex two to three nights prior to incident.[21] If so, prior sexual activity could be "a basis for counsel to believe that the injuries were the result of consensual sex." *Id.* at 32. In essence, Petitioner theorizes this inquiry would interject a reasonable doubt that he caused an injury that was required to support the CSP II conviction. Because Foster did not request a hearing about the admissibility of the victim's prior sexual activities, Petitioner believes that he received ineffective assistance of counsel.

New Mexico's rape shield law provides that "evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that that court finds that, the evidence is material to the case and its inflammatory or prejudicial nature does not outweigh its probative value." N.M. Stat. Ann. § 30-19-16(A) (1978). If a defendant proposes to offer such evidence, "the defendant shall file a written motion prior to trial." § 30-19-16(B). It is undisputed that no such motion was filed.

But the record demonstrates that Foster, in fact, did attempt to present such evidence. *Doc. 37-1* at 80 (Foster testifying that "[p]reviously the Court did not allow me to introduce any type of evidence [of a prior sexual encounter]"). At trial, Foster argued that the SANE nurse's testimony had opened the door to questioning about the source

---

[20] Rule 11-413 outlines the procedures for introducing evidence of a victim's past sexual conduct. It prohibits such evidence "unless, and only to the extent that the court finds, that evidence of the victim's past sexual conduct is material and relevant to the case and that its inflammatory or prejudicial nature does not outweigh its probative value." NMRA Rule 11-413.

[21] Dunn also objects to Foster not introducing DNA evidence that "could have come from another partner." *Doc. 31* at 32. Dunn does not further elaborate on this argument.

of the injuries. *Id.* at 81. Out of the hearing of the jury, the state court heard argument on both sides, and then ruled that the evidence was inadmissible. *Recording, CD 4* at 40:22—56:51.

Even had the trial court permitted the additional evidence, Dunn has not shown there was a reasonable probability that the outcome would have been different. The SANE nurse testified both that the victim's vaginal injuries were not consistent with consensual sex and that they were consistent with having been inflicted hours, not days, before the examination. Nor were the vaginal wounds the only injuries.

CSP II does not require a showing of sexual injury. Rather, it requires the State to show that a defendant committed the offense "by the use of force or coercion that results in personal injury to the victim." Photographs taken by the SANE nurse documented over 76 injuries on the victim's body, including significant bruising on her wrists and back. Another injury to the victim's jaw was examined in the emergency room to rule out a fracture. *Recording, CD 5, Track 2* at 29:44.

Dunn also argues that Foster should have objected to testimony by the SANE nurse when she "parroted what the victim told her about the assault." *Doc. 31* at 33. To show that Foster performed ineffectively, Dunn must overcome "the presumption that, in this case, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. At the evidentiary hearing, Foster testified that he had purposefully decided not to object to the SANE nurse's testimony. *Doc. 37-1* at 82:2. Such objections, he explained, often prejudice a jury against a defendant. *Id.* at 82:2-9. Foster decided to use cross-examination instead as a "trial strategy" to "get the facts out before the jury, that in no way was [the SANE nurse] trained in any aspect to testify and determine how injuries were caused. She was only there to examine and present facts

on what she saw in her examination. And not make a statement about how they were caused." *Id.* at 81:18-23.

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington,* 562 U.S. at 105. The state court had the opportunity to observe the trial, found Foster credible, and did not discredit his testimony regarding his trial strategy. *Id.* at 104:14-15 (Judge McDonald observing that "the testimony and evidence arrayed against [Dunn] at this trial was substantial"). Petitioner fails to show that Foster was ineffective in his trial strategy.

### d.  Failure to object to jury instructions

Finally, Petitioner argues that his counsel was ineffective for failing to object to the omission of the "without consent element" in the CSP instructions and the omission of the first-degree elements in the kidnapping instruction. As discussed above, Petitioner suffered no prejudice such that counsel's failure to object amounts to harmless error. In sum, Petitioner fails on the prejudice prong of the *Strickland* inquiry. That is, Petitioner fails to establish a reasonable probability the outcome of the trial would have been different had such objections been asserted by trial counsel.

## IV.  Recommendations

The Court hereby recommends that Petitioner's Writ of Habeas Corpus under 28 U.S.C. § 2254 be denied on all claims for the reasons set forth above. The Court further recommends that a certificate of appealability be likewise denied.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

UNITED STATES MAGISTRATE JUDGE