**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KENNETH A. DUNN

       Petitioner,

v.                                                                          Civ. No. 1:18-cv-00289 MIS/KBM

KEN SMITH, Warden, and
HECTOR H. BALDERAS, Attorney General
for the State of New Mexico,

       Respondents.

## MEMORANDUM OPINION AND ORDER ADOPTING PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Proposed Findings and Recommended Disposition ("PFRD") by United States Magistrate Judge Karen B. Molzen, filed on March 22, 2022. (ECF No. 42). Counsel for Petitioner filed timely Objections to the PFRD on April 26, 2022. (ECF No. 47). Respondents filed a response on May 5, 2022. (ECF No. 48). Petitioner then filed a reply (ECF No. 49); Respondents filed a Motion to Strike Petitioner's Reply (ECF No. 50); and Petitioner filed a response in opposition to the Motion to Strike (ECF No. 51). The Court will deny the Motion to Strike for the reasons stated in Petitioner's opposition.

The Court has given de novo review to the PFRD, Petitioner's Objections, Respondents' responsive brief and Petitioner's reply. Being fully advised, the Court will (1) overrule the Objections; (2) adopt the PFRD; (3) deny the Petition for Writ of Habeas Corpus; (4) dismiss this case with prejudice; but (5) grant a certificate of appealability.

## BACKGROUND

Dunn was arrested on July 21, 2003, and a state grand jury returned an indictment ten days later charging him in three counts with criminal sexual penetration ("CSP"), aggravated burglary, and kidnapping. ECF No. 35-1 at 1–2. The issue of competency was raised, evaluations were ordered, and the state court found Dunn to be competent to proceed to trial on March 28, 2006. *See id.* at 11, 14, 37–38, 52–55, 97. The jury trial began 36 days later, on May 2, 2006, almost 34 months after Dunn's arrest. *See id.* at 124. The jury found Dunn guilty on all three counts, and State District Judge Louis P. McDonald imposed nine-year terms of incarceration on both the CSP and aggravated burglary counts and an 18-year term on the kidnapping charge, all to run consecutively for a total of 36-years imprisonment. *Id.* at 124–26.

The post-judgment proceedings, both in state court and here in federal court, are set forth in great detail in the PFRD and will be repeated only if needed in addressing Petitioner's Objections. *See* ECF No. 42 at 7–11. Respondents' request that this Court proceed to the merits of the federal Petition constitutes an effective waiver of earlier concerns as to exhaustion and timeliness requirements. *See* ECF No. 34 at 17–18; *Wood v. Milyard*, 566 U.S. 463, 476 (2012). Thus, no further discussion of those issues is required.

In the PFRD, after noting that the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply, Judge Molzen correctly explained that a federal court must presume that a state court's factual findings are correct unless clear and convincing evidence indicates otherwise. *See* ECF No. 42 at 1–2. She then

2

recited the factual findings of Judge McDonald, who presided at trial and denied Dunn's

state habeas petition, as follows:

> On July 21, 2003, the victim, then 16, awoke to a knock on her door. She looked out her bedroom window and saw her friend's family car. Assuming it was her friend, she went to the door. When she opened the door, she found her friend's father, Petitioner. The victim immediately tried to close the door, but Petitioner placed his foot in the door and pushed his way into her home.
> The victim ran for the garage and Petitioner ran after her. When the victim attempted to escape under the then opening garage door, Petitioner immediately pushed the garage door button and the door began to close. Petitioner tried to pull the victim back into the house. The victim screamed for help. When Petitioner was able to get the victim back into the house, they sat in the laundry room and the victim attempted to calm Petitioner and reason with him.
> Eventually, Petitioner walked into the living room and the victim again tried to escape. Petitioner restrained the victim in the living room and pulled her to the floor. Petitioner handcuffed the victim's right hand. Petitioner then hit the victim. The victim continued to try to get away from Petitioner, but he pinned the victim to the floor. At that point, Petitioner digitally penetrated the victim.

*Id.* at 3 (quoting ECF No. 35-1 at 304, Judge McDonald's February 5, 2016 Order

denying habeas relief). Judge Molzen also specifically noted that Judge McDonald

"expressly found that 'witness testimony made clear that the victim was not voluntarily

freed.'" *Id.* (quoting ECF No. 35-1 at 310).

In his Objections, Petitioner sets forth the following claimed errors by Magistrate

Judge Molzen in her PFRD analysis.[1] First, he contends that the improperly omitted jury

instructions at trial violated his Sixth Amendment and due process rights and that the

magistrate judge mistakenly employed a harmless error analysis to those errors. ECF

No. 47 at 1–6, 11–12. Second, Petitioner maintains that Judge Molzen incorrectly

---

[1] At various points, Petitioner refers to the "magistrate" or "magistrate court," neither of which is accurate. The District Court system features two types of federal judges that preside over both criminal and civil matters: United States District Judges and United States Magistrate Judges. As of December 1, 1990, Congress declared that "magistrate judge" is now the official title of individuals appointed under 28 U.S.C. § 631.

weighed and balanced the *Barker*[2] factors in finding that Dunn's speedy trial rights were not violated. *Id.* at 6–11. Finally, Petitioner disagrees with the PFRD's determination that Dunn received effective assistance of counsel. *Id.* at 13–14.

## LEGAL STANDARD

Objections to a PFRD "must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). When resolving objections to a PFRD, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). In addition, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

## DISCUSSION

As Judge Molzen correctly explained in the PFRD, "[o]n habeas review of a state conviction, AEDPA 'requires federal courts to give significant deference to state court decisions' on constitutional issues." *Hawes v. Pacheco*, 7 F.4th 1252, 1263 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 1699 (2022) (quoting *Lockett v. Trammell*, 711 F.3d 1218, 1230 (10th Cir. 2013)). "When a state court has adjudicated the merits of a claim and denied relief," as is the case here, "a federal court may grant habeas relief only if the

---

[2] *Barker v. Wingo*, 407 U.S. 514 (1972).

state court decision 'was contrary to,[3] or involved an unreasonable application of,[4] clearly established[5] Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)(1)–(2)). A federal district court may grant § 2254 habeas relief "only if there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." *Id.* (quotations omitted). In other words, if reasonable judges *could disagree* about whether the state decision—here, Judge McDonald's order denying habeas relief—conflicts with Supreme Court precedent, then the Court *cannot* grant habeas relief. With these principles in mind, the Court will now address Petitioner's Objections.

## I. The Missing Elements in the Jury Instructions

Judge Molzen agreed with Petitioner that the trial court erroneously failed to properly instruct the jury as to first-degree kidnapping. *See* ECF No. 42 at 25–33. Specifically, the jury was not given a special interrogatory for finding aggravating factors necessary to elevate a kidnapping conviction from second to first degree. *See id.* As explained in the PFRD,

---

[3] A state court's decision is "contrary to" clearly established federal law if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

[4] A state court's decision is an "unreasonable application of" clearly established federal law "if the state court correctly identifie[d] the governing legal principle from [Supreme Court] decisions but unreasonably applie[d] it to the facts of the particular case." *Id.*

[5] "Clearly established law is determined by the United States Supreme Court," and the Court's "holdings . . . must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

> For crimes committed in 2003 implicating first-degree kidnapping, the jury was to decide whether "the defendant did not voluntarily free [name of victim] in a safe place" and whether "the defendant inflicted great bodily harm on [name of victim]." A first-degree conviction was established if the jury answered "yes" to either or both of these questions. Use Notes to NMUJI 14-6018. In the absence of such findings, the defendant would be found guilty of kidnapping in the second degree which carried a lesser sentence.

*Id.* at 27.

However, Petitioner objects to Judge Molzen's conclusion that the jury instruction error was harmless. Petitioner argues that the error violated the Sixth Amendment guarantee that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Petitioner also relies on *Alleyene v. United States*, 570 U.S. 99 (2013), for the proposition that "[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Id.* at 114–15.

Petitioner seems to contend that *Apprendi* and its progeny undermine Judge Molzen's finding of harmless error and reliance on the Supreme Court's earlier decision in *Neder v. United States*, 527 U.S. 1 (1999). As Petitioner correctly notes, Justice Scalia stated in *Neder* that "depriving a criminal defendant of the right to have the jury determine his guilt of the crime charged—which necessarily means his commission of *every element* of the crime charged—can never be harmless." ECF No. 47 at 3 (quoting *id.* at 30) (emphasis in original). But, as Petitioner concedes, Justice Scalia's discussion takes place in his <u>*dissenting*</u> opinion in *Neder.*

6

Instead, the majority in *Neder* expressly found that an instruction's omission of an element of an offense "does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U.S. at 9. As noted in the PFRD, *Neder* instructs that "where it is uncontested that the charge to the jury omitted an element of the offense, the reviewing court must apply the 'harmless-error analysis.'" ECF No. 42 at 31. This Court agrees with Judge Molzen that having never been overruled, *Neder* remains good law[6] and applies here.

In applying the harmless error standard, "[a]n instructional error may be harmless where the element on which the jury was not properly instructed was 'uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.'" *United States v. Holly*, 488 F.3d 1298, 1307 (10th Cir. 2007) (quoting *Neder*, 527 U.S. at 17). Again, as Judge Molzen observed in her PFRD,

> There was absolutely *no* evidence that could support *any* finding that Dunn voluntarily released the victim. When the officer arrived at the scene, the victim was screaming and struggling as Dunn was digitally penetrating her. The partially clothed victim was found cowering under a piano and still wearing the handcuffs Dunn had used to restrain her. The fact that Dunn was caught in the act and opted to open the door rather than face a violent confrontation with law enforcement could not equate, *in any way*, to voluntarily releasing the victim. Having given meticulous review of the evidence received by the jury, this Court concludes beyond a reasonable doubt that a jury would have so found had it been given the 14-[6018]

---

[6] Neither *Apprendi* nor *Alleyne* overruled *Neder*. In fact, neither *Apprendi* nor *Alleyne* even mention *Neder* or the harmless error standard in their analysis. Moreover, in *Apprendi*, the issue arose when the defendant had entered a plea agreement. 530 U.S. at 469–70. The judge enhanced the sentence after hearing evidence from the state and the defendant regarding whether the defendant had a racial motive for committing the underlying crime. *Id.* at 470–71. The judge weighed the evidence, found the state's more credible, and imposed a higher sentence. *Id.* No such judicial weighing of evidence happened here. Petitioner does not claim that he introduced evidence that he released the victim or that she consented to his sexual conduct. Rather, he simply argues that the jury was not instructed properly.

Upon review of *Neder*, *Apprendi*, and *Alleyne*, the Court does note that perhaps the Supreme Court might be inclined to move away from the standard established in *Neder*, given the principles discussed in *Apprendi* and *Alleyne*. However, that is for the Supreme Court to decide, not this Court. Since neither *Apprendi* nor *Alleyne* addressed *Neder* or the harmless error standard, the Court agrees that *Neder* is still good law and applies here.

special verdict form. Because the error was harmless, habeas relief is unavailable to Petitioner as to the first-degree kidnapping conviction.

ECF No. 42 at 33. The Court agrees with Judge Molzen's application of the law and assessment of the evidence presented at trial—it was "uncontested and supported by overwhelming evidence" that Petitioner did not release the victim, "such that the jury verdict would have been the same absent the error." *See Neder*, 527 U.S. at 17.

Moreover, the statute specifies that a defendant is guilty of second degree kidnapping if the defendant "voluntarily frees the victim in a safe place *and* does not inflict physical injury or a sexual offense upon the victim." N.M. Stat. Ann. § 30-4-1. Thus, even if the jury could reasonably have found that Petitioner voluntary freed the victim, it would also have had to find that he did not commit a sexual offense upon the victim. *See id.* Yet, the jury independently found Petitioner guilty of CSP. Such is enough to sustain a verdict for first degree kidnapping in New Mexico, *State v. Dominguez*, 327 P.3d 1092, 1098–99 (N.M. Ct. App. 2014), and further supports a finding of harmless error.

Similarly, given the overwhelming and uncontested evidence at trial, the omission of the "without consent" instruction on the CSP charge likewise constitutes harmless error.[7] No reasonable jury could have found Petitioner guilty of criminal sexual penetration but simultaneously concluded that the victim consented to Petitioner's actions, given the uncontested and overwhelming evidence to the contrary. As the Supreme Court has stated, "we are entitled to stand back and see what would be accomplished by" granting habeas relief and thereby a new trial. *Id.* at 15. "Reversal

---

[7] Moreover, at the evidentiary hearing before Judge McDonald on June 17, 2014, Dunn admitted that "I never claimed I was innocent. I just don't agree with, perhaps, how much time I was given, the process." ECF No. 37-1 at 109.

without any consideration of the effect of the error upon the verdict would send the case back for retrial—a retrial not focused at all on the issue of [safe release or lack of consent], but on contested issues on which the jury was properly instructed." *Id.* The Constitution does not require such a result. *Id.* Petitioner's objections on these alleged points of error will be overruled. Based on the record, "the jury verdict would have been the same absent the error[s]." *See id.* at 17.

## II. Right to a Speedy Trial

As Judge Molzen correctly explained in the PFRD, the Supreme Court has outlined a four-factor balancing test to assess whether a defendant was deprived of his right to a speedy trial: "[1] length of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The PFRD went on:

> The state court correctly identified the Sixth Amendment as delineated in *Barker* as the clearly established federal law applicable to speedy trial claims. *See* [ECF No. 35-1] at 306. After examining and weighing each *Barker* factor, Judge McDonald determined that Dunn's speedy trial rights had not been violated. When a [state] court identifies the appropriate legal [principles] in analyzing a constitutional claim, a federal court is limited to examining whether the court unreasonably applied those principles to the facts in the case under review. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "Habeas relief is only available if there is no possible balancing of the factors that both supports the [state court's] decision and is not contrary to clearly established Supreme Court precedent." *Jackson v. Ray*, 390 F.3d 1254, 1266–67 (10th Cir. 2004).

ECF No. 42 at 14.

In its *Barker* analysis, the PFRD sets forth in detail the cause for the 34-month delay in getting the state case to a jury trial. ECF No. 42 at 13–25. At its heart, Dunn's competency was at issue. Petitioner's objections dispute that any competency evaluations were ever necessary and again repeat his contention that his espousal of

Sovereign Citizen beliefs could not justify an inquiry into his competency to stand trial. ECF No. 47 at 7–9. This ignores, however, that it was Dunn's appointed attorney who initially requested a local competency evaluation. *See* ECF No. 35-1 at 11. This Court agrees with Judge Molzen that it was not unreasonable for the state court to question and explore Dunn's ability to understand and assist his counsel. Indeed, that is an obligation of the presiding judge when confronted with indications of incompetency, especially when raised by counsel.

The more troubling part of the speedy trial analysis lies in the excessive time it took the State to address the competency evaluation process. The state court record is somewhat confusing and is fully described in the PFRD. *See* ECF No. 42 at 2–7. What becomes clear, however, is that Dunn's unwillingness to participate in the local competency evaluation process[8] contributed to the delay and his eventual commitment to the Las Vegas Medical Center ("LVMC") for an evaluation. *See* ECF No. 35-1 at 134. It also appears that there was another delay in transferring him to LVMC—no beds were available. *See* ECF No. 37-1 at 37. Because Dunn played no role in that portion of the delay, it should weigh against the State.

Concerning the delay from Dunn's placement at LVMC on August 18, 2005, until March 28, 2006, when Judge McDonald found Dunn competent to proceed to trial, this Court is aware that such competency evaluations often take significant time to perform. *See* ECF No. 35-1 at 307. Yet the court record does not reflect receipt of a competency report, only Judge McDonald's March 28, 2006 Order finding Dunn to be competent to

---

[8] Petitioner claimed that he simply intended to assert his Fifth Amendment right to remain silent when he refused to take a competency exam. *See* ECF No. 35-1 at 42, 134. However, it is well established that without a proper warning that statements made during a competency evaluation can be used against a defendant, such cannot be used against a defendant without violating the Fifth Amendment. *Estelle v. Smith*, 451 U.S. 454, 461–69 (1981).

proceed to trial. *See id.* at 97. The Court finds that it cannot assess this delay against either party. Finally, the jury trial began promptly after the competency issue was resolved. *See id.* at 124.

Despite the identified concerns, this Court concurs with the *Barker* analysis undertaken by Judge Molzen in the PFRD. Judge McDonald found that the delay was presumptively prejudicial and weighed the first factor in favor of Petitioner. ECF No. 35-1 at 306. Next, the judge explained that the reason for the delay was that Petitioner's competency was questioned and weighed the second factor in favor of the State. *Id.* The third factor was weighed in favor of Petitioner because he asserted his right to a speedy trial. *Id.* at 307. Finally, the court weighed the fourth factor in favor of the State because Petitioner did not demonstrate "oppressive pretrial incarceration and anxiety" and "made no showing that the pretrial delay impaired his defense." *Id.* On balance, and since the prejudice prong is to be weighed very heavily, the state court found no violation of Petitioner's speedy trial rights. *Id.* Because "[h]abeas relief is only available if there is no possible balancing of the factors that both supports the [state court's] decision and is not contrary to clearly established Supreme Court precedent," the Court will overrule Petitioner's objections and deny habeas relief on the speedy trial claim. *See Jackson*, 390 F.3d at 1266–67. As the PFRD explains, the state court's balancing of the factors was not contrary to clearly established Supreme Court precedent.

### III. Ineffective Assistance of Counsel Claim

To succeed on a claim of ineffective assistance, Petitioner must establish that his counsel's performance: (1) fell below an objective standard of reasonableness and

(2) that he was prejudiced by this performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, as discussed above, this Court agrees with the PFRD's conclusion that Dunn's attorneys reasonably questioned his ability to understand and assist them with his defense, and therefore, no ineffective assistance of counsel claim can be premised on their requests for a competency evaluation. *See* ECF No. 42 at 40–41. Second, even if counsel should have objected to the deficient CSP and first-degree kidnapping jury instructions, no prejudice can be shown because these deficient instructions constituted harmless error, as found above. Finally, this Court agrees with the PFRD's conclusions that Petitioner did not meet his burden to show by clear and convincing evidence that counsel failed to explain the plea offer in a way that prejudiced Petitioner. *See* ECF No. 42 at 42–43 (reviewing the state court record and applying the facts to the legal standards outlined in *Lafler v. Cooper*, 566 U.S. 156, 164 (2012), and *Brumfield v. Cain*, 576 U.S. 305, 322 (2015)). Thus, Petitioner's objections will be overruled, and no habeas relief will be granted on the ineffective assistance of counsel claim.

## CONCLUSION

The Court has given de novo review of Magistrate Judge Molzen's PFRD and due consideration to the Objections filed by Petitioner, and it agrees that no evidentiary hearing is necessary because all issues can be resolved on the record. *See Schriro v. Landrigan*, 550 U.S. 465, 468–69 (2007) (holding that it is within the discretion of the district court whether to grant an evidentiary hearing). For the reasons stated above, the Court will adopt the PFRD and dismiss the Amended Petition.

The Court will, however, grant a Certificate of Appealability, because Petitioner has made a substantial showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Boutwell v. Keating*, 399 F.3d 1203, 1211 (10th Cir. 2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

**IT IS THEREFORE ORDERED** that Respondents' Opposed Motion to Strike (ECF No. 50) is **DENIED** for the reasons stated in Petitioner's Response (ECF No. 51). Moreover, Respondents suffer no prejudice by the allowance of such a reply here.

**IT IS FURTHER ORDERED** that Petitioner's Objections to the PFRD (ECF No. 47) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition (ECF No. 42) is **ADOPTED**.

**IT IS FURTHER ORDERED** that the Amended Petition pursuant to 28 U.S.C. § 2254 (ECF No. 31) will be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED**.

A final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure will be entered concurrently herewith.

**IT IS SO ORDERED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE